Let's wait for everybody to get set up. Okay, when you're ready. Good morning. May it please the Court. My name is Maurice Harmon from the firm of Harmon & Seidman. With me is Gregory Albright, one of the co-authors of the brief. Okay. We represent Minden Pictures, Inc. I'll refer to them as Minden. This case is about whether Minden falls within the zone of interest that are protected by Section 501B of the Copyright Act. Well, I think a more precise way to say it is Minden an owner within the meaning of the Copyright Act. Yes, but 501B says either a legal owner or a beneficial owner of the copyright may bring the suit. I understand that. The zone of interest really applies to an APA case, as you well know from Lexmark. Correct, but now the Lexmark zone of interest standard has been applied to several other Federal statutes and causes of action. And within Lexmark itself, it actually says this analysis, this new analysis should apply to all statutory rights of action. So we think that we disagree with Wiley when they contend that this is somehow this new Lexmark standard, which is really to distinguish Article III standing from any other consideration, that this, that Lexmark does apply to all Federal statutes. On the question, who has the right to bring a claim? Well, let me tell you my reading of Lexmark. My panelists may or may not agree with me. I view Lexmark as not changing the law of copyright infringement one whit. We read the statute. The statute says the following people are allowed to bring suit for copyright infringement. And Lexmark doesn't speak to that question. We've got a lot of law on the question, Lexmark not included. Well, we're not really disputing Your Honor's view. We think it comes from a different perspective to this extent, that Lexmark really says you look at the statute, as the Court has indicated. In this particular statute, there's section 501 that talks about who gets to sue, right? Correct. Okay. The legal or beneficial owner. Right. There we go. Now we're back home. We call it the zone of interest or what the statute says, that's where you go anyway. Yes. Here we think there are two reasons why Minden should be permitted to sue under 501B. Okay. There we go. The first reason is that he's a legal owner. And he's a legal owner because of the assignments of co-ownership and the accrued claims of the photographers. Understanding that there are two assignments, two sets of assignments, one before the case was filed, one after the case was filed, we have the collateral estoppel issue. And I should advise the Court in candor that yesterday, the day before, a notice of dismissal or a motion for dismissal of the appeal in Minden v. Pearson was filed because the case was settled to the satisfaction of all parties. Thank you. Yesterday? I think it was yesterday. I was on a plane coming out from Newark, but I think it was. So that case was in the pipeline but is either no longer or about to be no longer in the pipeline. Correct. Okay. However, District Judge Chen said either because of collateral estoppel or his own judgment, looking at the first set of assignments, the first assignment, we'll call them, that there was only a bare right to sue that was assigned and that it was a sham. That is, he agreed with Judge Alsop. Well, I'm not sure he really did. He just said collateral estoppel and he didn't need to go much further than that. He recited what Judge Alsop had held. Correct. With respect to the second set, however, Judge — the District Judge ruled that he would not consider that second set of assignments because they were obtained post-filing. He said that because you cannot establish jurisdiction after the case is filed, essentially. When you say first and second, I'm not sure. Keep me straight as to what your antecedents are when you say first and second. Okay. First set of assignments, second set of assignments. Well, but one is a copyright assignment and the other one is an agency agreement. Which one are you talking about? No, there's even a third. Okay. It's more complicated. Okay. So you have the first set of written assignments of legal ownership, conveying from the photographers to Minden, both copyright and accrued claims, causes of action. And when you say first, are we talking chronologically? Yes. Yes, Your Honor. And that's what Judge Tan calls agency agreement. No. Then the agency agreement existed — actually, I misspoke. What first happened was an agency agreement was signed by the various photographers providing Minden certain rights with respect to their images we contend. That's because this is a business where — and Minden Pictures, Inc., is Larry Minden, a single guy down near Santa Cruz, Watsonville, who has this company. He got photographers to provide collections of photographs to him so that he could go out then and market those photographs to people like Wiley, or entities like Wiley. He got an agreement in writing from the photographers at the time that they entered into that relationship. Following that, years later — he's had that relationship with the photographers for decades, a couple of decades — following that, he did obtain the written assignment of co-ownership of copyright and the accrued claims, both before the case was filed and then after Judge Alsop's opinion in Minden v. Pearson, when obviously the Court ruled that the first set of assignments, in its view, were not adequate to convey legal ownership. This is Judge Alsop now? Correct. Okay. So — but if you look at these assignments, they very clearly say — Now, when you say these assignments, are you talking about — Both. What Judge Alsop said was wrong, or are you talking about the licensing agreement? I'm talking about the second set of assignments, not the first. For now, let's put aside the stock photography agreements with the photographers, if I may. Okay. Because we have the first set of assignments, the second set of assignments. The first set of assignments were pre-filing. The second set were post-filing. Before all of those, and I probably misled you before, was the agency agreement. Right. So agency agreement, first set of assignments, second. Judge Alsop was concerned, right, about the second set because they were post-filing and there's a jurisdictional problem. That's where you started a minute ago. Judge Chen was. Oh, forgive me. I misspoke now. Understood. Yes, yes. And he said I can't consider those because they are essentially jurisdictional facts that came into being post-filing. However, we have North Star that has just come down about five days ago in this circuit. And North Star, so two issues about that, but let me tell you about North Star first. North Star said that even an assignment of Article 3, that provides Article 3 standing post-filing of the complaint is sufficient to provide essentially Article 3 jurisdiction in the party bringing the suit. So there's a financial firm. They wanted to sue Schwab, claiming that Schwab had not followed the rules with respect to some investments. The financial firm had no shares in this Schwab fund, but some of its clients did. It, after the suit was brought, got an assignment from one of the parties who did not own shares in the Schwab fund. North Star, your colleagues, said that was sufficient to establish Article 3 standing. We're not even doing that here. We don't need that much. It's very helpful, but we don't need that much. Because here Wiley concedes, and we certainly assert, that we have Article 3 standing, because Article 3 standing is provided in Minden because, A, he suffered a direct injury, and, B, it can be redressable by the courts. So here we really have just the question whether Minden can bring the claims of the photographers under 501B. So, surely, if you can get Article 3 standing after the lawsuit is filed, how could you possibly not get sufficient, the sufficient right to bring the claims of the photographers under 501B to bring the claims after the complaint was filed? So let me understand the structure of the argument here. It's not, at the moment, you're not arguing that Judge Chen was wrong on the question he decided with respect to the license, to the agency agreement. You're saying that you should prevail on the assignment, which was the question that Judge Chen put to one side and didn't decide, and you're saying he was wrong to put it to one side. And you're saying that had he reached the merits of that question, you should have won. Is that the argument? I'm saying I agree with the last part of that, but not about, no, that if he had examined the second assignments, we would have won. But I can't agree with you, I can't help you out quite that much on this, on the agency agreements, because we do think that the agency agreements. Let me do it this way. Putting to one side agency agreement for the moment, so let's not argue about agency agreement for the moment. Okay, correct. But you're saying with respect to what you're calling the post-filing assignment that you should win if we were to reach that issue, Judge Chen didn't reach that issue, and you're saying he was wrong to put it to one side. Yes. Am I following you correctly? Yes. Got it. Okay. However, I'm a bit concerned and heartened to hear the Court say perhaps some advice should be provided the district court in this respect. Because the issue, we will be right back up here again, but a year and a half from now, if the Court follows the logic of Judge Alsop, and actually in the opinion that we're appealing, Judge Chen does say, and even if he had agreed, if he had looked at it, he would agree. So he's saying over the collateral estoppel? That's right. Right, right. But even if there weren't that, I would agree with Judge Alsop's view. But let me focus on the question now as to whether or not Judge Chen was wrong, reversibly wrong, to set to one side and not decide the question of the post-filing assignment. Yes, without question. Reversibly wrong? Yes, without question. Now, especially in light of North Star, he simply should have considered the second set of assignments, and it's not a jurisdictional issue. That's Article III standing is all you have now. That's jurisdiction. It's not jurisdiction to say, you can call it whatever you want. I don't want to say statutory standing anymore after Lexmark. I think you're perfectly right in saying statutory standing after Lexmark. I'll say prudential standing. And not prudential either. You know, that's how we grew up. We, you know, in the law, we were saying those words. So it's hard not to say statutory standing. No, statutory standing is fine. It's a zone of interest that you have to apply only with respect to APA standing, and it's prudential standing. That's now forbidden. Those are bad words. Those are bad words now. But statutory standing is perfectly fine. Okay. I want to reserve a little bit of time. It's just flying for rebuttal. I just want to say that before I end now, the interpretation of 501B should be set against the policy background of the Copyright Act. And Congress has established the Copyright Act to promote the creation of works that are protected by copyright, creative works. And if you don't permit, and the practicality of this case is that if you don't permit in this instance, where there's a lot of little claims, you could divide these up and chop them up like divisible copyrights now and have them filed all over the country. If you don't permit Minden to bring claims or someone in his position of this nature which, after all, could be resolved by Wiley then in one case, then you really do practically prohibit because, as the Copyright Office says, there is no small claims court for copyright infringement. And they're talking about trying to create one and making that proposal, but that's not what we have today. Then the practical result will be that you can't enforce your copyrights, and that's antithetical to the policy of the Copyright Act. I realize your time is running down, but don't worry about that. Okay. Thank you. My question goes really to that practical issue. I mean, I tried to think about this as I was preparing the case. How difficult would it be for you simply to join all the photographers and bring a single suit? I mean, Minden is trying to sue on their behalf, trying to bring the suit either under the agency agreement or, I gather, as an assignee of their causes of action. How hard is it simply to list all of the photographers as plaintiffs and just bring them as, just join them as plaintiffs? Well, as a practical matter, they're scattered across the country and some overseas. Yeah, yeah, but that doesn't mean they can't join in a single suit. Understood. But then the second part of that is that discovery then begins including deposing all of the separate plaintiffs and the cost associated with that, and that has been, you know, a real factor in considering how to effectively and efficiently bring these cases. And to have every single plaintiff then be deposed around the country creates its own issue in terms of the efficient and just determination of the claims. And conversely, how difficult is it for Wiley, why is it intrusive for Wiley to have one action brought by a duly authorized representative of that group and get all of these claims resolved in one case? Yeah. Well, I have to say I'm very sympathetic to your position as a practical matter. I'm not yet sure whether the law will permit that. But to have a very awkward procedure where you've got all these very small stakes people, each one of them required to be adjoined plaintiffs, does seem inefficient and awkward. I'm sympathetic with that point. Whether the law lets you do, lets Mindern bring suit, that's the question in front of us. Yeah. Understood. I wanted to reserve a bit of time. Is it all right to have two minutes? Well, we'll do, and this is my normal custom, so don't think I'm doing you any special favors. We'll hear from the other side, but we will give you a chance to respond. Thank you. Yeah. Good morning, Your Honors. May it please the Court. No. Have you exceeded the number that you were allowed? Excuse me? Have you exceeded the number that you were allowed? Which number? The number of reproductions, the number of editions you were allowed to publish. That hasn't been determined. That is to say you prefer not to comment on that question? Well, it hasn't been adjudicated. There is no issue of liability in this case. The comment was in some sense facetious. Right. That is concerning. Your overall position is concerning for the practical reasons that were just discussed. And I understand that. I'm not sure I finished introducing myself. I'm sorry. Well, I jumped in a little too quickly. Please go ahead. That's quite all right. Just for the record, Steven Zansberg on behalf of the appellee and the defendant, John Wiley and Sons, Inc. And, Your Honors, we completely agree that the issue is whether or not Judge Chen appropriately found that the cause of action that Minden has asserted is not one it has standing to assert because it's not within the class of parties that Congress has reserved its statutory remedies. Minden has based its claim upon 288 contracts. It had with Wiley. And it asserts that those contracts have been breached and that it has been damaged as a result of that breach. And it certainly could assert claims, justiciable Article III standing, redressable injury, in fact, as a result of its alleged not conceded breaches of those licenses. It's chosen not to do so. It's also Because I assume that the damages available under the Copyright Act for Infringement might be larger. They might well be. These were licenses that are about $125 a photograph, as opposed to $30,000 statutory damages or $150 for willful infringement per infringement. Yes, they are significantly greater, and they're significantly greater when they're that these very same plaintiffs' lawyers have represented throughout the country and that every single court who has heard these exact same arguments that Lexmark has changed fundamentally the law of statutory standing has expressly rejected. We cited another case that was just handed down last week in the district, I'm sorry, Southern District of New York. It's now the sixth district court to reject claims that nonexclusive licensing agents, such as Minden Pictures, do not have standing. Could you address, because I confess my preparation was, I now realize, somewhat incomplete because I had not really focused on, I had focused very carefully on the licensing agreements. I had not really focused on what are now represented to me as post-filing assignments of causes of action. Now, Judge Chan apparently set those to one side, did not consider them. Was he wrong to do that? He was not. Why was he right to do that? Well, and as Your Honor has done, I, too, prepared a lengthy presentation prepared to address the bulk of the argument, because this was an appeal from the summary judgment ruling primarily on the agency agreements, as they refer to the original stock photo licensing agreements. And I haven't heard a word yet contesting that Judge Chan appropriately found. I heard a word. He does not want to concede that Judge Chan got that part right. I understand. But there wasn't any argument on the merits. So turning to the, so again, for ease and understanding, there were these stock photo agency agreements that, by its own admission, Minden Concedes did not create an exclusive license. So the two categories of owners that Congress has limited its statutory rights under the Copyright Act, legal owners and beneficial owners, a legal owner includes a non-exclusive, includes an exclusive licensing. But Minden Conceded, under the agency agreements, it does not have an exclusive license, and it is therefore not a legal owner. Turning to, so after earlier cases that these plaintiff's lawyers have litigated, knowing that those agency agreements do not establish ownership interests sufficient to convey standing, prefiling, there was that first set of assignment agreements that Judge Alsop found were shams, that were conveying nothing but a bare right to sue. And Minden is precluded in this appeal from relying upon those first set of assignments because they have conceded they are collaterally estopped, and they have admitted that on Wednesday of this week the appeal in Minden v. Pearson was dismissed. It's a final action. No argument is made in their briefing that collateral estoppel bars them from relying upon those agreements. So the second set of agreements, the first set of assignment agreements are not part of this case at all. Can't be. The third set of agreements, post-filing 2013 agreements issued days or weeks after Judge Alsop's ruling were crafted by these plaintiff's lawyers, and again attempted to correct the deficiencies that Judge Alsop had found with the earlier assignments. This was presented at the time to Judge Chen under a motion to dismiss. So first he dismissed all the claims based upon both sets of assignment agreements without addressing the merits of the second set. And then later we had summary judgment on the agency agreements. So procedurally that's how this went. The dismissal was on a motion to dismiss the complaint. And the complaint was premised upon a set of assignment agreements as well as the original agency agreements that existed at the time of the complaint. And Judge Chen appropriately said, failure to state a claim upon which relief can be granted. Now, he did so under the context of 12b1, because at the time before Lexmark we thought we were talking about a subject matter jurisdiction issue. It's since been clarified that it's more in the nature of a failure to state a claim, because the claim is ownership of copyright, a prerequisite for a copyright infringement action. And so Judge Chen quite appropriately, applying right haven, said that post-complaint agreements such as this sort cannot create standing. They're not subject to this motion to dismiss. North Star, which counsel mentioned, was handed down in a two-to-one decision on Monday, is quite easily distinguishable, aside from not being a copyright case. It was looking at a third amended complaint. In fact, a motion had been filed to amend the complaint in order to allow for the Court to consider these later drafted, post-initial filing drafted agreements, the transfer of the claim for the investment advisors. Here, no such motion was filed. In fact, to the contrary, Minden Pictures has filed a separate action. There is presently an action pending below before Judge Chen, premised exclusively standing upon this third set of contracts, the second set of assignments. That case has stayed pending this Court's resolution. But rather than seek leave of the Court, as was done in North Star, and the North Star panel says very clearly that the Court has the discretion under Rule 15 whether to allow for amendment. And so the Court has to decide in the first instance whether or not to allow a relation back to the date of filing. That is completely distinguishable from the facts here. At the time Judge Chen decided the motion to dismiss, the complaint, the third set of agreements, the second set of assignments were not before him. They were not part of the complaint that was the subject of the motion to dismiss, and he acted entirely appropriately in refusing to consider them at that time. Does that answer Your Honor's question on that? That actually does help, and it helps me understand what I missed when I read Judge Chen's earlier order. I will go back and read Judge — reread Judge Chen's earlier order to make sure that I'm following along in the way that you want me to, but I now understand the position. I have a question about that one. It may be a question as something that's not in front of us now. In the ordinary scheme of things, if I have a good cause of action, I have the right to assign that cause of action to anybody I want to. And you're saying that that's not available in copyright cases. Under Silvers and Righthaven, this Court is bound by those decisions, and they both stand for the proposition that under the Copyright Act, and Silvers actually speaks more broadly about intellectual property, but specifically under the Copyright Act, the assignment of a bare right to sue does not give a plaintiff standing. And to state it somewhat differently, bare right to sue sounds pretty terrible. How about assignment of a cause of action? Okay. They're one and the same. There must be a transfer of a copyright ownership interest other than a chosen action to use the — Oh, yeah. We can go French. Right. Okay. We can go French, but your position is it's still not under 501, right? That's correct. I got it. Okay. And that is — and essentially, Minden is completely candid. It has told the Court that it asks this three-judge panel to find that both the en banc decision in Silvers, as well as Righthaven, that it doesn't mention, is no longer viable and has been abrogated, to use the wording of the Minden document No. 35, the supplemental authorities it cites. That was for the Spindex decision. The Spindex decision I thought was perfectly right, by the way. And I agree, and very well written as well. But the point is, as Your Honor said, Lexmark has absolutely nothing to do with the law of standing under the Copyright Act. In that very same argument — Brian, isn't that statement overly broad? All you need to worry about is copyright infringement in this case, right? Yes. But the zone of interest to what Lexmark did is to limit, under the Lanham Act, an extremely broad statement of statutory cause of action for any person who believes he's likely to be injured by false advertising. And so because it was this incredibly broad statement that could apply to even false advertising, the Court said we need to limit that, using now statutory not prudential standing doctrine, to the zone of interest and the proximate cause, and found that the zone of interest as stated in the statute itself, in the declaration of the interest, are those of commercial reputation and commercial injury, and so limited the — that very broad reach. But what you said a minute ago — I'm not — I don't dispute any of that. What you said a minute ago, and maybe it doesn't matter a whole lot, but you do have a couple minutes left, was that Lexmark didn't change anything vis-à-vis standing as to the Copyright Act. And in this case, we only need to be worried about copyright infringement in 501, right? That is correct. It — and so completely correct that the statutory standing for copyright infringement in 501B is limited to legal and beneficial owners. And Lexmark cannot be used, where Lexmark created a limitation on this extremely broad sweep. And there is language in Lexmark that suggests it is in the Lanham Act context to be, and other courts have applied it outside to ERISA and other statutory contexts. But that's why it matters, right? You can't just point your finger to the Copyright Act or broadly to an umbrella statute, as opposed to the provision you're suing under, or in this case they're using, which is 501. Exactly. Congress has, in contrast to the Lanham Act and other statutes that create broad standing for any person who believes he or she was injured, Congress very specifically, and this Court said so in Silvers, that Congress has very carefully circumscribed the — the classes of individuals who have the authority to proceed under this statute. And they are extremely clearly stated to be owners, either legal or beneficial owners. And nothing Judge Chen did below was an error in finding that under the agreements put before him, Minden is neither a legal nor beneficial owner. And for that reason, we ask that the Court fully affirm the ruling below. Okay. Thank you. Thank you. Now, we took you over time. Let's put two minutes on the clock for you to respond. Thank you, Your Honor. I'll answer the Court's first question to my opponent. Wiley has been adjudicated a copyright infringer by two juries, one in New York and one that my partner tried in Chicago in November, for the very same scheme probably involving overlapping books that we're talking about here. And both — I'm very concerned about the — I mean, I think I've made that pretty clear. For my part, just speaking for myself, I'm concerned about how this fact pattern fits in or doesn't into this statute and what remedies might be or may not be available given that there, as you said, no small claims action. That's my shorthand way of explaining what I find disturbing. But what do we do about this, the fact that there is a clear indication in Section 501 about who can sue under this? Well, Menden can sue under this action because he got not just, as in Silvers, where there was just an accrued claim, accrued causes of action were transferred, but here he got transfer of copyright ownership. And it's very clear. You can get copyright ownership and accrued claims, when you get those two factors in the assignment, you are a legal owner. What's — the problem has been that somehow judges, and there have been some drive-by rulings following the Judge Alsup's opinion, that look at the motivation of the transfer and say, what was the reason for the transfer? Oh, my gosh, the reason for the transfer was to sue. Well, so what? And there wasn't a long enough duration, or the duration was uncertain. And guess what? The copyright is going back to the photographers at the end of the suit. So this is terrible. It's a bare right to sue. It's a bad thing. Now, this argument is again directed to the assignments that Judge Chen refused to look at or consider. Correct. And in Kandor — I'm not sure. I've got to look back. I'm not sure that question is properly in front of this panel. Well, we would ask that the Court consider at least some direction to go back to the district court. Because if the district court takes the same approach that it did with respect to the assumption of Judge Alsup's reasoning, not the collateral estoppel, but assuming — Telegraph the punch. He said he would have agreed with Judge Alsup, right? Exactly.  But you could have pursued the Alsup case, right? I mean, you decided you didn't want to continue that appeal. Right. Well, all I can say is we settled that case to the satisfaction of both parties in that case. Yeah. Okay. But there is legal ownership. And the Court should not go behind the scenes and say, why did you assign? You assigned to me, Your Honor, you know, legal title to your car. Does it matter why you did that? And does it matter that we have an agreement that I'll give it back to you at the conclusion of some event? It should not. And we think all of this should be construed against the backdrop of the Copyright Act, which is to permit creators to exploit their work and get money for it. It's not to help infringers. Three summary judgment motions also have been — have been — orders have been      And we think all of this should be construed against the backdrop of the Copyright Act, which is to permit creators to exploit their work and get money for it. It's not to help infringers. Yeah. Got it. No, I — please don't take my facetious comment at the beginning to think that that's a question that I think is in front of us. I understood. But this case is not in a vacuum. And this isn't — this is one of many. Okay. Okay. Thank you very much. The case of Minden Pictures v. John Wiley & Sons is now submitted for decision. Thank both sides for your arguments. All right. Ms. Clark, for this session, stands adjourned.
judges: Noonan, Fletcher, Christen